# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.

KIMBERLYN SUZUKI,

    *Plaintiff*,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

    *Defendant*.

---

## COMPLAINT

---

Plaintiff Kimberlyn Suzuki, by and through her counsel of record, McDermott Law, LLC, for her Complaint against Defendant Life Insurance Company of North America, states and alleges as follows:

### I. PARTIES, JURISDICTION AND VENUE

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et. seq*.

2. Plaintiff Kimberlyn Suzuki ("Plaintiff" or "Ms. Suzuki"), at all times pertinent hereto, was and is a resident and domiciliary of the State of Colorado.

3. Prior to becoming disabled, Ms. Suzuki worked as a Clinical Pharmacist for Exempla St. Joseph Hospital, which is a part of the Sisters of Charity of Leavenworth Health System, Inc.

4. By virtue of her employment, Ms. Suzuki was a "participant" in and "beneficiary" of the SCL Health Associate Welfare Benefit Plan ("Plan") as those terms are defined by 29 U.S.C. § 1002(7) and (8).

5. The Plan is an "employee benefit plan" as that term is defined by 29 U.S.C. § 1002(3).

6. As part of the Plan, employee participants were guaranteed certain long-term disability ("LTD") income replacement benefits if they became disabled as defined by the Policy.

7. Life Insurance Company of North America ("Defendant" or "LINA") administers the LTD portion of the Plan.

8. The Plan's LTD benefits were funded by Group Long Term Disability Insurance Policy number FLK-980186 ("Policy").

9. Upon information and belief, LINA is the designated claim administrator for the Plan regarding claims for benefits under the Policy.

10. LINA is a subsidiary company of LINA Group Insurance.

11. Defendant LINA is a Pennsylvania insurance company, organized and existing under the laws of the State of Pennsylvania, with its principal place of business and headquarters in Philadelphia, Pennsylvania.

12. LINA is registered with the Colorado Division of Insurance and conducts the business of insurance in the State of Colorado.

13. The Court has subject matter jurisdiction over the action under 28 U.S.C. 1331 and 29 U.S.C. §§ 1132(e) and (f).

14. This Court has personal jurisdiction over the Defendant.

15. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(a) & (b) and 29 U.S.C. § 1132(e)(2).

## II. GENERAL ALLEGATIONS

### A. The LTD Policy

16. Under the LTD Policy, LINA promised that if Ms. Suzuki was disabled while the Policy was in effect, it would pay 50% of her Covered Earnings, rounded to the nearest dollar, and reduced by Other Income Benefits.

17. The LTD Policy defines "disabled" as is applicable to Ms. Suzuki's claim to mean:

> You are considered Disabled if, solely because of Injury or Sickness, you are:
>
> 1. unable to perform the material duties of your Regular Occupation; and
> 2. unable to earn 80% or more of your Indexed Earnings from working in your Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, you are considered Disabled if, solely due to Injury or Sickness, you are:
>
> 1. unable to perform the material duties of any occupation for which you are, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 60% or more of your Indexed Earnings.

18. LINA was responsible for investigating and evaluating LTD claims for benefits and appeals and made all determinations regarding Plaintiff's eligibility for and entitlement to benefits under the Policy.

19. LINA was required to ensure that all benefit determinations under the Policy were reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

20. LINA, as the insurer and underwriter of the Policy, is solely liable for the payment of benefits on all approved claims and, if a claim is approved, must pay those benefits from its own funds.

### B. **LINA's Approval of STD Benefits Under the Regular Occupation Definition of Disability**

21. Ms. Suzuki's medical history is most significant for, among other conditions, post-concussion syndrome, neurocognitive impairment, migraine headaches, post-traumatic headaches, and chronic fatigue.

22. Ms. Suzuki's last day of work at Exempla Saint Joseph was January 14, 2018.

23. Ms. Suzuki submitted a claim for short term disability ("STD") benefits due to her medical conditions on January 18, 2018.

24. LINA determined Ms. Suzuki's date of disability was January 15, 2018 and approved her claim under the Regular Occupation definition of disability found in the short-term disability ("STD") plan.

25. Due to her disability, LINA paid Ms. Suzuki STD benefits from January 22, 2018 through the maximum STD benefit period of July 14, 2018.

### C. **LINA's Denial of LTD Benefits**

26. When Ms. Suzuki and her treatment providers determined her conditions continued to prevent her from performing the duties of her Regular Occupation, Ms. Suzuki applied to transition her claim from STD to LTD.

27. Without any evidence showing an improvement in her medical conditions, and contrary to the medical records and seven (7) opinions of three (3) treatment providers, LINA denied Ms. Suzuki's LTD claim by letter dated October 24, 2018.

28. In full compliance with 29 U.S.C. § 1133, Ms. Suzuki timely submitted her appeal of the adverse benefit determination to LINA on January 7, 2019.

29. Plaintiff's appeal included a Cognitive-Linguistic Evaluation performed by A. Amelia Major, M.S., CCC-SLP (at Colorado Brain Injury) which revealed a cognitive-communication disorder secondary to a concussive injury.

30. As part of LINA's appeal review, a peer-to-peer consultation with her neurologist, Nathan Kung, M.D., took place.

31. Dr. Kung specifically informed LINA's doctor that Ms. Suzuki was unable to work due to persistent postural perceptual dizziness.

32. According to the ERISA Regulations, LINA was required to render a claim decision within 45-days, or by February 21, 2019.

33. Almost 145 days after the 45-day appeal decision deadline passed, LINA upheld its original decision to deny LTD benefits by relying exclusively on the medical reviews obtained by LINA and performed by individuals who had never met, interviewed, or examined Ms. Suzuki.

34. With the assistance of undersigned counsel, Ms. Suzuki submitted a second appeal on December 13, 2019, which included medical records outlining her reduced functionality as a result of an increase in her symptoms, articles describing her medical conditions and medications, testimonial letters from Ms. Suzuki and her friends and family, a Neuropsychological Evaluation Report, arguments explaining the reasons LINA's decision to terminate benefits was arbitrary and capricious, and other evidence in support of her claim.

35. By letter date January 10, 2020, LINA notified Ms. Suzuki it would be conducting a medical review and could possibly require an extension of time to render an appeal decision.

36. Two weeks later, LINA requested an extension of up to 45-days to make a decision on the pending claim appeal, as it was scheduling a "Peer Review of the medical information currently on file."

37. On January 24, 2020, Ms. Suzuki objected to LINA's request for an extension, because a medical review was required by the ERISA Regulations and did not constitute a "special circumstance."

38. LINA failed to perform a medical review, vocational review, or render an appeal decision before the 45-day appeal decision deadline of January 30, 2020.

39. The ERISA mandated 45-day deadline to render an appeal decision expired on January 30, 2020 without an appeal decision by LINA.

40. On February 7, 2020—eight (8) days after the appeal decision was due—LINA notified Ms. Suzuki it was "currently reviewing her file" and "would make our appeal determination as soon as possible."

41. On February 24, 2020, Ms. Suzuki questioned whether LINA's February 7th letter constituted a second request for an extension of time and reiterated her prior objections to the appeal decision delays.

42. By letter dated March 6, 2020—81 days after receiving Ms. Suzuki's appeal and 36 days after the appeal decision was due—LINA claimed that "in order to assess Ms. Suzuki's function, an Independent Neuropsychological Examination should be conducted."

43. On March 10, 2020, Ms. Suzuki objected to the request for a neuropsychological evaluation during the appeal process and especially after the deadline to render an appeal decision passed.

44. Even if a special circumstance existed that would have allowed LINA to extend the appeal decision deadline by 45-days, the appeal decision was due no later than March 12, 2020.

45. LINA did not render an appeal decision by March 12, 2020.

46. Ms. Suzuki has exhausted all required administrative remedies and is entitled to seek the relief requested in this Complaint.

47. Since originally filing her claim for LTD benefits, Ms. Suzuki has been and remains disabled as a result of Injury or Sickness as the Policy define those terms.

48. Ms. Suzuki has satisfied all conditions precedent to receiving benefits under the Policy.

49. Ms. Suzuki is entitled to LTD benefits under the Policy since her benefits were denied as of July 15, 2018, and they are due and owing through the date of judgment and through the maximum benefit periods of the Policy.

**D.    LINA's Adverse Decisions Are Not Entitled to Deference**

50. LINA's adverse benefit determinations were not substantially justified, were arbitrary and capricious, were unsupported by substantial evidence, constituted abuses of any discretion allowed, and were wrongful under the circumstances.

51. In upholding its adverse benefit determinations, LINA failed to review and consider Ms. Suzuki's testimonial letters describing her symptoms, letters from her friends and family describing their observations of her subjective symptoms, information describing her medical conditions, medical records, claim forms and opinion letters from Ms. Suzuki's doctors that verified her disability, neuropsychological testing, among other evidence contained within the claim file proving Ms. Suzuki's disability.

52. In upholding its adverse benefit determinations, LINA relied exclusively on the opinions of its employed or contracted medical and vocational reviewers.

53. LINA's appeal decisions are contrary to the overwhelming evidence in the file, including the seven (7) opinions of three (3) treatment providers and the valid test results of a neuropsychological evaluation.

54. LINA's failure to perform a full and fair review of Ms. Suzuki's claim was the result of a conflicted claim process and is therefore not entitled to deference.

### E. **LINA's Pattern and Practice of Violating the ERISA Regulations and Terms of the Plan**

55. The ERISA regulations provide that the plan administrator shall notify a claimant of the plan's benefit determination not later than 45 days after receiving the claimant's request for review. 29 C.F.R. §2560.503-1(i)(1)(i) and (i)(3)(i).

56. An administrator is only permitted to request an additional 45 days to render an internal appeal determination when "special circumstances," such as the need for a hearing, prevent a decision from being rendered within the initial 45-day period.

57. The LTD Policy includes an "Appeal Procedures for Denied Claims" which states as follows:

> The Insurance Company has 60 days from the date it receives your request to review your claim and notify you of its decision (45 days, in the case of any claim for disability benefits). Under special circumstances, the Insurance Company may require more time to review your claim. If this should happen, the Insurance Company must notify you, in writing, that its review period has been extended for an additional 60 days (45 days in the case of any claim for disability benefits).

58. LINA's October 24, 2018, July 15, 2019, August 12, 2019 and August 28, 2019 adverse benefit determinations were based in whole or in part on medical judgments.

59. LINA was required by the ERISA Regulations to consult with a health care professional who has appropriate training and experience in the field of medicine as part of the internal appeal process.

60. During the internal appeal process, LINA had control over arranging consultations with the appropriate health care professionals and ensuring such consultations were completed in a timely manner.

61. LINA's failure to consult with the appropriate health care professionals in a timely manner did not constitute a special circumstance authorizing an additional 45-days to render the appeal decision.

62. If LINA ever reaches an appeal decision, it will be considered untimely, because it was not rendered within the initial 45-day time-period authorized by the ERISA Regulations and the Policy.

63. LINA's pattern and practice of not rendering timely appeal decisions is due in part to a defective claim and internal appeal process or is intentional.

### III.   CLAIM FOR RELIEF
### (Claim for Relief Under ERISA Section 502(a))

64. Ms. Suzuki incorporates herein all allegations contained in this Complaint.

65. Ms. Suzuki brings this action under ERISA Section 502(a), which, among other remedies provides her with a right to file a civil action to recover benefits due under the Policy and Plan, to enforce her rights under the Policy and Plan, and/or to clarify her right to future benefits under the Policy and Plan. See ERISA Section 502(a)(1)(b), 29 U.S.C. § 1132 (a)(1)(b).

66. The evidence presented to LINA establishes that Ms. Suzuki has been continuously disabled under the terms of the Policy from the date benefits began through present.

67. At all relevant times, Ms. Suzuki is and has been entitled to LTD benefits under the Plan and Policy.

68. Defendant ignored and/or unreasonably discredited information supporting Ms. Suzuki's entitlement to LTD benefits under the Policy.

69. By the acts and omissions described herein, and through others likely to be uncovered through discovery, Defendant breached the terms of the Policy.

70. As a direct and proximate result of Defendant's breach, Ms. Suzuki has been denied benefits due to her under the LTD Policy since her benefits were denied as of July 15, 2018.

71. Ms. Suzuki brings this action to recover past-due LTD benefits (with interest) retroactive to July 15, 2018 (the date LINA should have begun paying her LTD benefits) and to obtain clarification of her rights to future LTD benefits.

72. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Ms. Suzuki may bring a civil action to enjoin any act or practice that violates ERISA or the terms of the Plan.

73. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Ms. Suzuki may bring a civil action to obtain other appropriate equitable relief to redress LINA's violations of ERISA and the Policy, or to enforce any provision of ERISA or the terms of the Policy.

74. By repeatedly violating multiple provisions of ERISA and the terms of the Policy, Defendant knew or should have known it could cause irreparable financial harm to Ms. Suzuki.

75. Defendant is a fiduciary of the Plan for purposes of ERISA Section 402(a)(1) with authority to control and manage the operation and the administration of the Plan and Policy.

76. By delaying payment of compensable claims, while simultaneously earning substantial interest and/or return on equity from the unpaid benefits, Defendant placed its financial interests ahead of Ms. Suzuki's and received financial benefits at her expense.

77. By the acts and omissions described throughout this Complaint, and through others likely to be learned through discovery, Defendant forced Ms. Suzuki to incur significant attorneys' fees.

78. By the acts and omissions described throughout this Complaint, and through others likely to be learned through discovery, Defendant denied Ms. Suzuki of a full and fair review of her claims and appeals.

79. As a Plan fiduciary, Defendant owes Ms. Suzuki an equitable duty to remedy and compensate her for the losses they caused her to suffer and when LINA breached its fiduciary obligations.

80. Under 29 U.S.C. § 1132(a)(3), Ms. Suzuki is entitled to equitable relief for the separate and distinct harms she suffered from Defendant's violations of ERISA and the Plan, and such equitable relief includes the following:

    a. Acceleration—an action advancing the breaching party's obligations under a contract—is an equitable remedy available under 29 U.S.C. § 1132(a)(3)

    b. Accounting for profits—an action for equitable relief against a person in a fiduciary relationship to recover profits taken in a breach of the relationship—is an equitable remedy available under 29 U.S.C. § 1132(a)(3);

    c. Disgorgement—an action seeking to have the court compel LINA to return improperly gained profits—is an equitable remedy available under 29 U.S.C. § 1132(a)(3);

    d. Injunctive relief is an equitable remedy available under 29 U.S.C. § 1132(a)(3).

e. Restitution—an action seeking an award of damages against a defendant that has been unjustly enriched at the Plaintiff's expense—is an equitable remedy available under 29 U.S.C. § 1132(a)(3); and

f. Surcharge—an award of money damages imposed on a fiduciary for breach of duty—is an equitable remedy available under 29 U.S.C. § 1132(a)(3).

81. Ms. Suzuki also seeks to recover all awardable interest, attorneys' fees, and costs under 29 U.S.C. § 1132(g).

**WHEREFORE**, Plaintiff, Kimberlyn Suzuki, requests the Court to enter judgment in her favor and against Defendant, LINA, as follows:

a) Declare that Plaintiff is disabled within the meaning of the Policy and is entitled to LTD benefits under the Plan and the Policy;

b) Order LINA to pay Ms. Suzuki all past-due benefits under the Policy from the date they became due through the date of judgment, together with interest (both statutory and moratory) on each monthly payment from the date it became due through the maximum benefit period of the Policy;

c) Determine and then declare that Ms. Suzuki is entitled to receive LTD benefits under the Policy for as long as she continues to meet the terms and conditions in the Policy for receipt of such benefits;

d) Order LINA to pay Ms. Suzuki the costs of the suit herein, including reasonable attorneys' fees, under ERISA Section 502(g)(1), 29 U.S.C. § 1132(g);

e) Provide such other and further equitable relief as this Court deems just and proper under 29 U.S.C. § 1132(a)(3), including without limitation the equitable remedies of

surcharge, disgorgement, injunctive relief, unjust enrichment, restitution, and/or accounting, in amounts to be proven.

Respectfully submitted this 12th day of March 2020 by:

McDermott Law, LLC

*s/* Shawn E. McDermott
_____
Shawn E. McDermott, #21965
4600 S. Ulster Street, Suite 800
Denver, CO 80237
(303) 964-1800
(303) 964-1900 (fax)
*shawn@mcdermottlaw.net*

Plaintiff's Address:
4023 S. Rosemary Way
Denver, CO 80237